Dear Mr. Coulon and Mr. Roedel:
This office is in receipt of your request for an Attorney General's Opinion with respect to the New Orleans Area Economic Development Fund (the "Development Fund"), which is administered by the Louisiana Stadium and Exposition District (the "LSED") in accordance with the provisions of LSA-R.S. 47:322.38, a copy of which is attached hereto and made a part hereof.
As noted in your letter, the monies in the Development Fund are administered by the LSED, but are "allocated" to state senators and representatives whose districts include any portion of Orleans Parish, for the provision of grants "for activities, projects, or programs undertaken for a public purpose, including but not limited to tourism, recreation, economic development, capital outlay, education, and services for youth and the elderly."
The LSED Board of Commissioners is required to monitor and evaluate the use of grant funds. In accordance with the statute, each grant application included, among certain other minimum standards and those established by the board, "a detailed budget for the activity or project, including measurable indicators of achievement of performance expectations." Grantees are also subject to audit by the Legislative Auditor. Following a hearing and upon a finding that any grant is not in compliance with statutory requirements (including, in our opinion, the grant application required by the statute) the LSED Board, with the concurrence of the Representative or Senator who allocated the grant funds provided to the noncompliant recipient, may revoke further funding of a grant.
It is our understanding that funds distributed to some noncompliant grantees have been outstanding and in the hands of those grantees since the year 2000, and that most have been outstanding since 2001. In spite of the Board's establishment of a deadline of February 28, 2004 for the completion of grant projects and compliance with the statutorily required monitoring process, certain grantees remain non-compliant. That deadline was extended by the Board to June 30, 2004, but you have indicated that a number of grantees remain non-compliant.
In light of the foregoing, you have requested that this office address the following questions:
 "(1) Under any circumstance, may a state senator and/or representative choose to "reallocate" funds originally provided to him/her for issuance to another grantee?
 (2) May a state senator and/or representative choose to allocate and/or "reallocate" funds originally provided to him/her for issuance to another grantee, if such "reallocation" results in the potential grantee failing to comply with the June 30, 2004 deadline established for close-out of the of the monitoring process?
 (3) Is the "grant program" established under La.R.S. 47:322.28 perpetual in nature, i.e., is the LSED Board required to continue to administer, monitor and evaluate the grant program irrespective of the administrative costs involved, or may the LSED set a final deadline to complete the program?"
In response to your first and second questions, we note that LSA-R.S. 47:322.38 does not provide any authority for lawmakers to "reallocate" funds originally allocated by that lawmaker to a grantee who has not utilized all or part of the grant funds. As such, it is the opinion of this office that a lawmaker does not have the authority to "reallocate" funds originally allocated by him/her to another grantee.
In response to your third question, it is the opinion of this office that the grant program established by LSA-R.S. 47:332.28
was contemplated by the legislature to be ongoing in nature, based upon the statute's recognition of the possibility that funds would be transferred into the Development Fund on an annual basis. In this respect, we note the provisions of LSA-R.S. 47:322.28(C)(6) which pertains to unexpended and unencumbered funds within the Development Fund. LSA-R.S. 47:322.28(C)(6) pertinently provides that such funds " shall be incorporated into the amounts available for appropriation for such grants in the next fiscal year." Although Mr. Roedel has advised that the Development Fund does not receive annual funding and has not received any funds beyond those initially transferred to it, the reference to future fiscal years indicates legislative intent that the grant program established by LSA-R.S. 47:332.28 was contemplated by the Legislature to be on-going in nature.
Please note that although it is our opinion that the program was intended to be ongoing, it is not the opinion of this office that individual grants are required to be administered by the LSED for an indefinite period of time. In our opinion the LSED Board's "administrative responsibility and authority" for grant funds [see: LSA-R.S. 47:322.28C(2)(b)], provides the LSED with the responsibility and authority to set deadlines for the completion of individual grant projects and for compliance with grant requirements established by the LSED.
Yours very truly,
CHARLES C. FOTI, JR.
Attorney General
BY: ________________________________
JEANNE-MARIE ZERINGUE BARHAM
Assistant Attorney General
CCF, jr./JMZB/dam
 TITLE 47. REVENUE AND TAXATION
SUBTITLE II. PROVISIONS RELATING TO TAXES COLLECTED AND ADMINISTERED BY THE COLLECTOR OF REVENUE CHAPTER 2-A. ADDITIONAL SALES AND USE TAX
47:322.38. Disposition of certain collections in Orleans Parish
A.(1) The avails of the tax imposed by R.S. 47:321 from the sale of services as defined in R.S. 47:301(14)(a) in Orleans Parish under the provisions of R.S. 47:321(C) and 322 in each fiscal year shall be credited to the Bond Security and Redemption Fund, and after a sufficient amount is allocated from that fund to pay all the obligations secured by the full faith and credit of the state which become due and payable within any fiscal year, the treasurer shall pay two million dollars of the remainder of such funds into a special fund which is hereby created in the state treasury and designated as the "Ernest N. Morial Convention Center Phase IV Expansion Project Fund".
(2) The monies in the fund shall be appropriated and used to provide funds for the project and shall be administered by the Ernest N. Morial — New Orleans Exhibition Hall Authority.
B.(1) The remainder of the avails shall be deposited into a special fund hereby created in the state treasury and designated the "New Orleans Sports Franchise Fund".
(2) The monies in the fund shall be appropriated and distributed each fiscal year to the Louisiana Stadium and Exposition District for use only to fund contractual obligations of the state to any National Football League or National Basketball Association franchise located in Orleans Parish. Such obligations shall be "expenses of the operations and maintenance of both the district and the properties" for the purpose of the use of all revenues, from whatever source, derived by the district. However, the team practice facility or corporate headquarters for a National Football League franchise may be located elsewhere in the state of Louisiana.
(3) The board of commissioners of the Louisiana Stadium and Exposition District shall have administrative responsibility and authority for the funds allocated pursuant to this Subsection.
C.(1) All unexpended and unencumbered monies in the New Orleans Sports Franchise Fund at the end of the fiscal year shall be transferred or deposited as hereinafter provided.
(a) The state treasurer shall first transfer to the state general fund an amount of such unexpended and unencumbered monies equal to the amounts actually expended by the state for reimbursement to the Charlotte NBA Hornets Limited Partnership of the NBA application fee and for transitional and relocation expenses incurred in relocating to New Orleans. Such transfers shall not exceed one million seven hundred fifty thousand dollars in the aggregate.
(b) After satisfying the requirement of Subparagraph (a) of this Paragraph, the remainder of such unexpended and unencumbered monies shall be deposited into a special fund hereby created in the state treasury and designated as the "New Orleans Area Economic Development Fund". The monies in the fund shall be allocated to each state senator and state representative whose district includes all or any portion of Orleans Parish, to be administered through the Louisiana Stadium and Exposition District, hereinafter "the district", to be used within Orleans Parish for the provision of grants for tourism, economic development, racetrack planning and development, and other activities, all as provided in Paragraph (2) of this Subsection.
(2)(a) Of the total appropriation from the fund which has been allocated pursuant to Subparagraph (1)(b) of this Subsection for the provision of grants, and which consists of monies placed into the fund on and after July 1, 1999, fifty percent shall be designated for grants to be selected by each state senator whose district includes all or any portion of Orleans Parish, and fifty percent shall be designated for grants to be selected by each state representative whose district includes all or any portion of Orleans Parish, in consultation with the board of commissioners of the district. The amount available for allocation by each senator shall be determined by dividing the population within Orleans Parish for the respective district by the total parish population and then multiplying such ratio by fifty percent of the total appropriation. The amount available for allocation by each representative shall be determined by dividing the population within Orleans Parish for the respective district by the total parish population and then multiplying such ratio by fifty percent of the total appropriation. Population data from the latest federal census shall be used in establishing allocation ratios.
(b) The board of commissioners of the district shall have administrative responsibility and authority for funds allocated pursuant to Subparagraph (1)(b) of this Subsection and shall consult with the appropriate representative or senator having authority to determine the grants to be distributed each year from the funds so allocated, but shall not have the authority to expend, obligate, allocate, or otherwise control any of such funds except as specifically provided in this Subsection.
(c) Grants shall be available for activities, projects, or programs undertaken for a public purpose, including but not limited to tourism, recreation, economic development, capital outlay, education, and services for youth and the elderly.
(d) Grants shall be exclusively available to public and private nonprofit entities, and such funds shall be expended only for a public purpose. No grantee which is a private, nonprofit corporation shall be involved in any political activity. "Political activity" shall mean an effort to support or oppose a proposition or the election of a candidate for political office or to support or oppose a particular political party in an election.
(3) The board of commissioners of the district shall develop a grant application process which shall be used by entities seeking grants. Grant applications shall include at a minimum:
(a) A detailed narrative describing the grant applicant, the proposed activity or project and its value, and the objectives to be accomplished through the use of grant funds.
(b) A detailed budget for the activity or project, including measurable indicators of achievement of performance expectations.
(c) If the grant applicant is a private, nonprofit entity, information on the entity's purpose, its size, the names and addresses of the members of its governing body, and its taxpayer identification number.
(4) The board of commissioners of the district shall monitor and evaluate the use of grant funds. The grantee shall cooperate in providing any information requested by the district relative to the funded activity. Each grantee shall be subject to audit by the legislative auditor in accordance with R.S. 24:513.
(5) Following a hearing and upon a finding that any grant provided pursuant to this Subsection is not in compliance with the requirements of this Subsection, the board of commissioners of the district, with the concurrence of the representative or senator whose funds were provided, may revoke further funding of such grant.
(6) All unexpended and unencumbered monies in the fund at the end of any fiscal year shall remain in the fund. All monies remaining in the fund which are to be used in Orleans Parish for provision of grants as provided in Subparagraph (1)(b) of this Subsection, which are unexpended and unencumbered at the end of the fiscal year, shall remain in the fund solely for use for such grants, and shall be incorporated into the amounts available for appropriation for such grants in the next fiscal year. The monies in the fund shall be invested by the treasurer in the same manner as the monies in the state general fund, and all interest earned shall be deposited into the fund.
D. No monies shall be appropriated from the State General Fund for the provisions of this Section.
Acts 1997, No. 1423, § 1, eff. July 1, 1997; Acts 1999, No. 1380, § 1, eff. July 1, 1999; Acts 2001, No. 1193, § 1, eff. June 29, 2001; Acts 2002, 1st Ex. Sess., No. 73, § 1, eff. July 1, 2002.